UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLOTTE YEE, | No. C-08-4259 MMC (EMC) |
| Plaintiff, | |
| v. | **ORDER RE JOINT LETTER OF NOVEMBER 24, 2009** |
| U.S. SECRETARY OF LABOR, HILDA SOLIS, | **(Docket No. 128)** |
| Defendant. | |
| _____/ | |

The parties have filed a joint letter, dated November 24, 2009, regarding various discovery disputes. The Court finds that a hearing on the issues raised in the joint letter is not necessary and accordingly rules on each issue as discussed below.

## I. DEFENDANT'S DISCOVERY REQUESTS

A. Requests Nos. 34 and 43

Defendant seeks Plaintiff's tax records from 1999 (*i.e.*, five years preceding the date of the first instance of alleged discrimination) to the present. Plaintiff refuses to produce any such documents.

The Court agrees with Defendant's contention that tax records are relevant because, here, Plaintiff is seeking lost wages as part of her damages.[1] Numerous courts have held that, where such

---

[1] The Court notes that, in the instant case, Plaintiff seems to be asking for lost wages not only with respect to her employment with the DOL but also with respect to employment with a Hawaii newspaper. Plaintiff contends that she could no longer work for the newspaper because of the alleged harassment she was suffering at the DOL. *See* Joint Letter, Ex. 1 (Resp. at 2).

damages are sought, there is good cause to require production of tax records. *See, e.g.*, *Twilley v. International Bedding Corp.*, 1:09-CV-00033, 2009 U.S. Dist. LEXIS 83050, at *3-4 (N.D. Ind. Sept. 10, 2009) (compelling the production of plaintiff's tax records because plaintiff had put the amount of his income into issue by seeking damages for, *inter alia*, lost wages; adding that defendant was entitled to verify plaintiff's asserted income and that plaintiff had offered no other way to do so); *Sowers v. Gatehouse Media Mo. Holdings, Inc.*, No. 4:08CV633 TIA, 2009 U.S. Dist. LEXIS 34208, at *4-5 (E.D. Mo. Apr. 23, 2009) (noting that, "[a]lthough federal courts generally resist discovery of tax returns, a showing of good cause can lead a court to decide tax returns are discoverable"; concluding that there was good cause in case under consideration -- an employment discrimination case -- because, *inter alia*, "[i]n a termination case, the employee must mitigate damages, and thus post-termination earnings may show the employee's efforts to satisfy this obligation"); *Young v. United States*, 149 F.R.D. 199, 204-05 (S.D. Cal. 1993) (noting that, although tax returns should not be subject to unnecessary public disclosure, here, disclosure was appropriate -- "[t]he government must be entitled to obtain discovery regarding Ms. Young's income as reported to the Internal Revenue Service in order to evaluate and defend against her claim for lost wages"); *cf. Anderson v. Abercrombie & Fitch Stores, Inc.*, No. 06cv991-WQH (BLM), 2007 U.S. Dist. LEXIS 47795, at *21 (S.D. Cal. July 2, 2007) (noting that financial or tax information is subject to a constitutional right to privacy under California law, but finding such information should be disclosed because it was relevant to damages, "in particular, Plaintiff's claims for lost wages and lost benefits, as well as mitigation of damages").

In the joint letter, Plaintiff argues that "Defendant's claim that the information it is requesting is for the purpose of mitigating damages . . . is entirely fictional. . . . If indeed it wishes to mitigate damages, [then] it should sit down and discuss what it will take to settle this matter." Joint Letter at 6. This argument misses the point. The point is that *Plaintiff* had a duty to mitigate damages. That is, even if Plaintiff was constructively discharged (as she alleges), she had a duty to mitigate the damages she suffered -- *e.g.*, by trying to find alternative employment. Any wages earned from the new employment could be used as a "set-off" with respect to the lost wages she would otherwise have earned had she still been employed by Defendant.

While the Court finds tax returns relevant to this case, it does agree with Plaintiff's contention that the time period requested by Defendant is overbroad. Since her termination or resignation took place in April or May 2007, it is not necessary for Defendant to obtain tax records all the way back to 1999. While Ms. Yee claims other sources of income were affected (thus making her tax records additionally relevant) three years prior should be sufficient. Accordingly, the Court orders Plaintiff to produce tax records for the period 2004 to the present.

B.  Requests Nos. 39-40, and 44

These document requests relate to Plaintiff's search for other employment, employment with a person or entity other than the DOL, and nonemployment income. As above, the discovery requested is reasonable because it is relevant to the issue of lost wages. However, similar to above, the time period sought by Defendant is overbroad. The Court therefore orders Plaintiff to produce responsive documents for the period 2004 to the present.

C.  Request No. 41

In this document request, Defendant asks for documents related to her qualifications for employment, including but not limited to her resume or other documents summarizing her education, employment experience, and other experience. Instead of producing documents, Plaintiff provided a narrative, a copy of which has been provided to the Court as Exhibit 1 to the parties' joint letter. A narrative is patently nonresponsive. Plaintiff is ordered to produce any documents already in existence responsive to the request.

D.  Rogs Nos. 13-16

In these interrogatories, Defendant asks for information about, *e.g.*, Plaintiff's employment with a person or entity other than the DOL, Plaintiff's attempts to mitigate damages, Plaintiff's income, and Plaintiff's sources of income other than the DOL. Plaintiff responded to these interrogatories with the same narrative referenced above. Plaintiff's narrative does not address Rog No. 15 at all. The narrative addresses the other interrogatories but is incomplete for the reasons stated by Defendant in the parties' joint letter. Accordingly, the Court orders Plaintiff to provide full and complete responses to Rogs Nos. 13-16.

## II. PLAINTIFF'S DISCOVERY REQUESTS

A. Request No. 3

Plaintiff seeks the annual financial disclosure for Mr. Holden for the period 2005-2007. Mr. Holden was the person who allegedly harassed Plaintiff while both were working at the DOL. Plaintiff argues that the information is relevant because it will show that Mr. Holden was in economic straits during that period. However, whether or not Mr. Holden was in economic straits is not probative as to whether or not he harassed Plaintiff or even retaliated against her. The Court therefore shall not order Defendant to produce any documents in response to Request No. 3.

B. Request No. 5

Plaintiff asks that Defendant be ordered to produce the electronic version of certain photographs that were taken during an office move in March 2007, including a photograph of a cabinet and safe. Defendant's response seems to be that it no longer has the electronic version of the photographs. If that is the case, then Defendant shall provide a declaration certifying that it has no electronic version of the photographs in its possession, custody, or control.

C. Request No. 6

Plaintiff asks that Defendant be ordered to produce for inspection the original documentation in the cabinet pictured in the photograph referenced above. Defendant's response is that it is impossible to do so because the cabinet was unpacked upon the office move. If that is the case, then Defendant shall provide a declaration certifying such.

D. Requests Nos. 7-9

In Request No. 7, Plaintiff asks for a copy of a certain e-mail issued by BLS management related to the office move in March 2007. In Requests Nos. 8 and 9, she asks for records of all telephone calls and text messages exchanged between BLS managers on the days of the office move.

Defendant represents that it has already produced the e-mail sought by Plaintiff. Plaintiff does not contend to the contrary in the joint letter. Accordingly, this issue is moot.

As for Requests Nos. 8 and 9, Defendant argues that it cannot produce any of the documents requested because the cell phones at issue were personal cell phones. Plaintiff asserts, however, that Mr. Holden at least had a government-issued Blackberry. To resolve this dispute, the Court orders

Defendant to provide a declaration, stating whether or not any of the BLS managers involved in the office move of March 2007 had government-issued cell phone on the days of the office move.[2] If so, then Defendants shall produce all phone and text records for the relevant dates in March 2007 that are available, including documents reflecting the *content* of the telephone or text communications if available.

E.  Request No. 10

Plaintiff seeks documents related to computer searches on Plaintiff conducted by Mr. Holden during the period 2006 and the present. Defendant claims that it maintains Internet log histories for twelve months only; "therefore, any responsive documents which may exist would post-date Plaintiff's May 14, 2007 resignation, and therefore would not be relevant to Plaintiff's claims." Joint Letter at 9. Defendant also argues that the records it has "are only available by IP address, not by the name of any user, so they do not necessarily reflect an individual user's search history." Joint Letter at 9.

The Court does not agree with Defendant's position that any records post-May 14, 2007, are irrelevant. Even if Plaintiff no longer worked at the DOL as of that date, if Mr. Holden conducted computer searches for her name after she left, that would support Plaintiff's theory that Mr. Holden was obsessed with her. Furthermore, even if records are only available by IP address, it would appear unlikely that Mr. Holden's computer would be used on a regular basis by anyone other than himself.

///
///
///
///

---

[2] In the joint letter, Plaintiff suggests that, even if personal cell phones were used, they were used for a business purpose during the office move per order of BLS management and therefore should be considered Defendant's business records. This argument is without merit. Even if employees used their personal cell phones for a business purpose, that does not mean that Defendant therefore has possession, custody, or control over the cell phone records.

Accordingly, the Court orders Defendant to produce documents responsive to the request.[3] To the extent documents are not available because Internet log histories are maintained for twelve months only, then Defendant shall provide a declaration certifying such.

F.  Request No. 11

Plaintiff seeks "[p]ositive identification of Debra Sandler, including, but not limited to, her curriculum vitae, her bar license number, and authenticated verification that she was involved in the April 11, 2007 investigation of the Plaintiff." Joint Letter at 10. Because Defendant has already produced all documents that it has in its possession, custody, or control about the Sandler investigation, this request is effectively moot. However, to the extent Defendant has a copy of Ms. Sandler's CV or a copy of a document reflecting her bar number, it should produce those documents to Plaintiff.

G.  Request for Documents Related to DOL's Office of the Solicitor

Plaintiff seeks documents related to travel by persons from the DOL's Office of the Solicitor to the San Francisco region. This request is patently overbroad. It is therefore denied.

H.  Request for Documents Related to Reimbursement Records for Mr. Holden and Travel by Mr. Holden

Plaintiff asks for documents related to reimbursement records for Mr. Holden and travel by Mr. Holden. The Court agrees with Defendant's position that these documents are irrelevant. Alternatively, it concludes that the documents are at best marginally relevant and the burden of production outweighs any probative value of the documents.

I.  Documents Related to Property Owned or Leased for BLS Operations and Documents Related to BLS Employees Not Reporting to a Federal Office

Plaintiff seeks "documentation of all property owned or leased by the Federal Government for the purpose of Bureau of Labor Statistics operations." Joint Letter at 12. She also seeks "documentation of all Bureau of Labor Statistics employees employed at any time between 2004 and the present and not reporting to a federal office. For purposes of this document request, reporting to

---

[3] At trial, Defendant is free to argue that any searches may not have been conducted by Mr. Holden.

1 a federal office shall be construed to mean having office space in a commuter-accessible location
2 (i.e. within 100 miles of domicile) owned or leased by the Federal Government." Joint Letter at 13.
3 The requests are patently overbroad and are therefore denied.

J. <u>Documents Related to Lists and Timelines for Acting Regional Commissioner Appointments</u>

Plaintiff asks for "lists and timelines of all Acting Regional Commissioner appointments of five days or more." Joint Letter at 13. The request is patently overbroad. Furthermore, Plaintiff has failed to demonstrate that the request has anything to do with the alleged lack of qualifications of Ms. Treadwell and/or the improper selection of Ms. Treadwell. Accordingly, Defendant shall not be required to produce any documents in response to this request.

K. <u>"Request for Review of Unresolved Matters and Necessity of Official Defendant Stipulations to Validate Fact"</u>

1. <u>Stipulation</u>

Although not entirely clear, it appears that Plaintiff wishes this Court to order Defendant to stipulate to the fact that, "[a]t no time did the agency step forward to separate [her] from [Mr. Holden]." Joint Letter at 14. This Court is without any authority to do so. Furthermore, even if it had the authority, it would decline to do so. In its prior order, the Court simply stated that it *appeared* undisputed that Plaintiff was denied interim relief. However, it now appears that Defendant does dispute such -- or at least that it disputes Plaintiff's contention that it did not step forward to separate her from Mr. Holden.

Moreover, the fact that Defendant does dispute Plaintiff's contention does not alter the Court's analysis in its prior order of November 17, 2009. *See* Docket No. 125 (order). The point that the Court made in its prior order was that it was irrelevant whether Ms. Wigglesworth was given an instruction to deny interim relief or whether or not she protested any such instruction. That remains true today -- *i.e.*, *if* no interim relief was given (a fact to be established at trial), Plaintiff can argue that fact in support of her case.

2. <u>Sandler Investigation</u>

Plaintiff argues that, now that Defendant has made clear that it has no other documents related to the Sandler investigation, this Court should make some kind of ruling about the Sandler

report that was produced by Defendant. *See* Joint Letter at 16. In a prior motion, Plaintiff suggested that the Sandler report had either been fabricated or redacted. *See* Docket No. 95 (Mot. at 3). That is an issue, however, for the trier of fact to resolve, not this Court.

### **III. CONCLUSION**

Where the Court has ordered documents to be produced, interrogatories to be responded to, or certifications to be provided, such shall be served upon the other side within two weeks of the date of this order.

This order disposes of Docket No. 128.

IT IS SO ORDERED.

Dated: December 3, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge