1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   CHARLOTTE YEE,                          No. C-08-4259 MMC

12          Plaintiff,                       **ORDER GRANTING DEFENDANT'S
                                             MOTION FOR SUMMARY JUDGMENT;**
13     v.                                    **DENYING PLAINTIFF'S MOTION FOR
                                             SUMMARY JUDGMENT; DENYING**
14   HILDA SOLIS, SECRETARY OF LABOR,        **PLAINTIFF'S MOTION FOR DISMISSAL**

15          Defendant.
     _____/
16

17          Before the Court is the Motion for Summary Judgment, filed January 22, 2010 by

18   defendant Hilda Solis, Secretary of Labor; plaintiff Charlotte Yee has filed opposition, to

19   which defendant has replied.  Also before the Court are plaintiff's Motion for Summary

20   Judgment or, in the Alternative, Adjudication of Claims, filed January 22, 2010, and "Motion

21   for Dismissal Without Prejudice on Nondiscriminatory (CSRA) Portion of Plaintiff's

22   Complaint," filed February 11, 2010; defendant has filed opposition to both motions, and

23   plaintiff has replied to the former.[1]

24          Having read and considered the papers filed in support of and in opposition to the

25   above-referenced motions, the Court hereby rules as follows.

26   //

27

28          [1]  The Court construes plaintiff's opposition to defendant's motion to incorporate by
     reference plaintiff's motion for summary judgment and evidence offered in support thereof.

*United States District Court*

*For the Northern District of California*

**BACKGROUND**

On September 9, 2008 plaintiff, a former economist with the United States Department of Labor ("DOL"), Bureau of Labor Statistics, filed the instant action against the Secretary of Labor in her representative capacity, alleging claims of race and sex discrimination, retaliation, and sexual harassment.  On January 7, 2010, plaintiff filed her Second Amended Complaint ("SAC"), alleging she was discriminated against on the basis of her race and sex by her former supervisors Nancy Treadwell Sefakis ("Sefakis") and Richard Holden ("Holden"), and retaliated against for having made prior complaints of discrimination.  Additionally, plaintiff alleges she was sexually harassed by Holden, in a manner giving rise to a hostile work environment and ultimately leading to her constructive discharge.

Plaintiff asserts claims under Title VII, 42 U.S.C.A. § 2000e-2 et. seq., the Civil Service Reform Act ("CSRA"), 5 U.S.C. §§ 1101 et seq., and the Privacy Act, 5 U.S.C. § 552a et seq.

Defendant seeks summary judgment on all of plaintiff's claims.  Plaintiff seeks summary judgment on her Privacy Act Claim and summary adjudication on her Title VII claim to the extent such claim is based on Holden's conduct.  Plaintiff seeks to dismiss without prejudice plaintiff's CSRA claim.

**LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(c).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact.  Once the moving party

1    has done so, the nonmoving party must "go beyond the pleadings and by [its] own

2    affidavits, or by the depositions, answers to interrogatories, and admissions on file,

3    designate specific facts showing that there is a genuine issue for trial." See Celotex, 477

4    U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried

5    its burden under Rule 56(c), its opponent must do more than simply show that there is

6    some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  "If the

7    [opposing party's] evidence is merely colorable, or is not significantly probative, summary

8    judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted).

9    "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light

10   most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587

11   (internal quotation and citation omitted).

12                                          **DISCUSSION**

13   **A.      Disparate Treatment – Title VII**

14            **1.   Applicable Law**

15            Under Title VII, it is unlawful for an employer to discriminate with respect to an

16   individual's "compensation, terms, conditions or privileges of employment, because of such

17   individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1).  Courts

18   analyze discrimination claims brought under Title VII under the burden-shifting framework

19   first outlined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792

20   (1973).  Under the McDonnell Douglas framework, a plaintiff must first state a prima facie

21   case of discrimination.  See McDonnell Douglas, 411 U.S. at 802.  To establish a prima

22   facie case of discrimination, a plaintiff must show "(1) she belongs to a protected class, (2)

23   she was performing according to her employer's legitimate expectations, (3) she suffered

24   an adverse employment action, and (4) other employees with qualifications similar to her

25   own were treated more favorably."  See Bergene v.Salt River Project Agr. Imp. and Power

26   Dist., 272 F.3d 1136, 1140 (9th Cir. 2001).

27            To establish a prima facie, a plaintiff need only offer admissible evidence that gives

28

                                                    3

rise to an inference of unlawful discrimination.  See Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).  "Establishment of the prima facie case in effect creates a presumption the defendant employer unlawfully discriminated against the employee," and shifts the burden of proof to the defendant to articulate a legitimate, nondiscriminatory reason for the action taken against the employee.  See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  The defendant must then submit evidence which, taken as true, would permit the conclusion there was a non-discriminatory reason for the actions taken. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993).  If the defendant does so, the presumption raised by the prima facie case is rebutted and the plaintiff must show the defendant's proffered reason was a pretext for discrimination.  See Burdine, 450 U.S. at 255.  At this stage of the analysis, "[t]he mere existence of a prima facie case, based on the minimum evidence necessary to raise a McDonnell Douglas presumption, does not preclude summary judgment" in favor the employer.  See Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994).  Rather, "[i]n response to the defendant's offer of nondiscriminatory reasons, the plaintiff must produce specific, substantial evidence of pretext."  See id.  "In other words, the plaintiff must tender a genuine issue of material fact as to pretext in order to avoid summary judgment."  See id.

### 1.    Adverse Employment Action

In the instant case, defendant argues, plaintiff has failed to make out a prima facie case as to her disparate treatment claims, for the reason that plaintiff was not subjected to an "adverse employment action."  See Bergene, 272 F.3d at 1140 (listing "adverse employment action" as essential element of disparate treatment claim).  For purposes of a disparate treatment claim under Title VII, "an adverse employment action is one that 'materially affect[s] the compensation, terms, conditions, or privileges of . . .  employment.'" See Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting Chuang v. Univ. of Cal. Davis., 225 F.3d 1115, 1126 (9th Cir. 2000).  "Among those employment decisions that can constitute an adverse employment action are termination, dissemination

4

of a negative employment reference, issuance of an undeserved negative performance

review and refusal to consider for promotion."  See Brooks v. City of San Mateo, 229 F.3d

917, 928 (9th Cir. 2000); see also Chuang, 225 F.3d at 1125-26 (holding "forc[ed]

relocation" of plaintiffs' workspace constituted adverse employment action where relocation

"disrupted important, ongoing" projects, caused plaintiffs to lose research grants, and

resulted in new location "totally inadequate for [plaintiffs'] ongoing research").

     Here, the employment actions on which plaintiff's claim is based consist of three

written communications: (1) a memorandum, dated January 28, 2004 recommending

plaintiff attend counseling ("counseling memorandum")[2] ; (2) a memorandum, dated March

17, 2004 reprimanding plaintiff for a failure to follow instructions ("letter of reprimand"); and

(3) a memorandum, dated April 5, 2007, notifying plaintiff of a proposed disciplinary

suspension ("notice of proposed suspension").  (See Proctor Decl. Exs. C, E, & M.)

     In support of its motion, defendant argues that the above-referenced

communications did not materially affect the terms conditions or privileges of plaintiff's

employment so as to constitute an adverse employment action under Title VII.  The Court

agrees.  First, with regard to the counseling memorandum and letter of reprimand, such

communications, as defendant points out and as noted above, do not, as a matter of law,

constitute adverse employment actions.  Plaintiff cites no authority to the contrary, nor does

she offer any evidence that she suffered any legally cognizable repercussion as a result of

either such communication.  Second, with respect to the notice of suspension, although a

suspension, if imposed, would constitute an adverse employment action, defendant has

---

     [2]  The counseling memorandum was issued after plaintiff made an expenditure of
DOL funds, which expenditure required pre-approval by her supervisor, Sefakis.  To the
extent plaintiff is claiming the requirement for pre-approval itself constituted an adverse
employment action, and even assuming, arguendo, such requirement could be so
characterized, any claim based thereon fails as a matter of law for the reason that
defendant has submitted evidence sufficient to show Sefakis imposed such requirement on
all employees under her supervision (see Proctor Decl. Ex. V ("Sefakis Aff.") at DOL00095)
and plaintiff has offered no evidence to the contrary.  See Bergene, 272 F.3d at 1140
(requiring showing that "other employees with qualifications similar to [plaintiff's] were
treated more favorably").

1    submitted undisputed evidence that plaintiff was not suspended (see id. Ex. J at DOL395),

2    that the notice was only the first step in a series of procedures provided to employees to

3    contest the grounds for any such proposed action (see id. Ex. M at 6), and that plaintiff

4    resigned prior to availing herself of such process (see id. Ex. J at DOL395).  Moreover,

5    plaintiff, has offered no evidence that any of the above-referenced communications

6    contained any misstatement of plaintiff's conduct as described therein.      Accordingly,

7    plaintiff has failed to raise a triable issue with respect to this essential element of her

8    disparate treatment claims.

9           **2.      Similarly Situated Individuals**

10          Defendant, relying on plaintiff's discovery responses, next argues plaintiff cannot

11   make out a prima facie case for the additional reason that she has no evidence to support

12   a finding that similarly situated individuals outside her protected class were treated more

13   favorably, see Bergene, 272 F.3d at 1140, but only her own inadmissible conclusions.

14   (See, e.g., Proctor Decl. Ex. A at 72:5-9 ("I don't think you'll find any incident where

15   [Sefakis has] ever taken these types of actions against white men"); id. at 74:17 ("Did any

16   white man get one [letter of reprimand]?"); id. at 74:23-75:36 ("So if you're asking me do I

17   believe it was based on race and sex, . . . those are two factors which are different about

18   me that don't exist with others.  So perhaps those were the reasons.")  In response, plaintiff

19   submits no argument, let alone evidence sufficient to support a finding, to the contrary.

20          Accordingly, plaintiff has failed to raise a triable issue with respect to this essential

21   element of her prima facie case.

22          **3.      Pretext**

23          Assuming, arguendo, plaintiff has established a prima facie case, defendant further

24   argues it has presented undisputed evidence of its legitimate, non-discriminatory reasons

25   for its issuance of the above-referenced communications and plaintiff has offered no

26   evidence to support a finding that such reasons were pretextual.

27           In particular, as defendant points out, the counseling memorandum itself contains a

28

                                             6

legitimate, non-discriminatory explanation for its issuance, specifically, that plaintiff had ignored her supervisor's instructions concerning an expenditure for office equipment.   (See id. Ex. C; see also id. Ex. V ("Sefakis Aff.") at DOL00095 (explaining purchases by all managers, including plaintiff, were subject to pre-approval by Sefakis "since it [was] a tight budget year" and Sefakis was "ultimately responsible" and, consequently, "want[ed] to make sure [her department was] matching [its] resources against its priorities")).

Next, the letter of reprimand itself, as defendant again points out, contains a legitimate, non-discriminatory explanation for its issuance.  Specifically, the reprimand was issued because plaintiff had (1) failed to communicate with her supervisor, (2) failed to follow procedures for issuing press releases, (3) failed to follow her supervisor's instruction not to work on certain assignments until receiving further approval, and (4) told her supervisor she was "not the type that always follows orders and that [her] boss is no one individual, but rather the taxpayer and the U.S. Government."  (See id. Ex. E.)

Lastly, the notice of proposed suspension sets forth the reasons for such proposed action, specifically, plaintiff's disrespectful conduct on four separate occasions, plaintiff's repeated failure to follow her supervisor's instructions to complete assigned and necessary work, and two separate acts of insubordination.  (See id. Ex. M.)

In response, plaintiff has offered no evidence, but only her own inadmissible conclusions, to support a finding that the above cited reasons were pretextual in nature. (See, e.g., id. Ex. A at 103:6-10 ("[T]hat's the only conclusion I can reach."); id. at 48:3-4 (opining without factual elaboration: "Sefakis doesn't like minorities[.]"); id. at 169:1-6 ("[M]aybe [Holden] likes fair-skinned asians.")).

**4.      Conclusion as to Disparate Treatment Claims**

Accordingly, for the reasons stated above, summary judgment will be granted in favor of defendant and against plaintiff on plaintiff's disparate treatment claims.

//

1   **B.      Retaliaton Claims – Title VII**

2      **1.  Legal Standard**

3      Title VII prohibits retaliation against employees who engage in activities protected by

4   the statute.  See Jordan v. Clark, 847 F.2d 1368, 1375-76 (9th Cir. 1998).

5           It shall be an unlawful employment practice for an employer to
            discriminate against any of his employees . . . because [the employee] has
6           opposed any practice made an unlawful employment practice by this
            subchapter, or because he has made a charge, testified, assisted, or
7           participated in any manner in an investigation, proceeding, or hearing
            under this subchapter.

8   See id. (citing 42 U.S.C. § 2000e-3(a)).

9      "The McDonnell Douglas order and allocation of proof that governs disparate

10  treatment claims also governs retaliation claims."  See Yartzoff v. Thomas, 809 F.2d 1371,

11  1375 (9th Cir. 1987).  "A plaintiff may establish a prima facie case of retaliation by showing

12  that (1) he engaged or was engaged in activity protected under Title VII, (2) the employer

13  subjected him to an adverse employment decision, and (3) there was a causal link between

14  the protected activity and the employer's action."  See id.  "If the plaintiff makes out a prima

15  facie case, the burden then shifts to the defendant to articulate some legitimate, non-

16  retaliatory reason for the adverse action."  See Jordan, 847 F.2d at 1376.  "The burden

17  then shifts back to the plaintiff to show that the asserted reason is pretextual."  See id.

18     **2.      Adverse Employment Actions**

19     Here, defendant argues, plaintiff has not identified any adverse employment action

20  taken in retaliation for plaintiff's assertion of her rights under Title VII.  For purposes of

21  retaliation claims under Title VII, "an action is cognizable as an adverse employment action

22  if it is reasonably likely to deter employees from engaging in protected activity."  See Ray v.

23  Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000).  Put another way, "[o]nly non-trivial

24  employment actions that would deter employees from complaining about Title VII violations

25  will constitute actionable retaliation."  See Brooks, 229 F.3d at 928 (listing "termination,

26  dissemination of a negative employment reference, issuance of an undeserved negative

27  performance review and refusal to consider for promotion" as examples of adverse

28

8

1   employment action).  Here, the employment actions on which plaintiff's retaliation claim are

2   based are the above-referenced communications on which plaintiff relies to support her

3   disparate treatment claim, as well as a sexual harassment complaint made against plaintiff

4   by Holden on April 11, 2007, and its subsequent investigation by the DOL.  As discussed

5   below, none of said actions is sufficient, either alone or in combination, to support a claim

6   of retaliation under Title VII.

7       First, criticism of the nature contained in the counseling memorandum and letter of

8   reprimand is insufficient to support a Title VII retaliation claim.  See, e.g., Hellman v.

9   Weisberg, 2009 WL 5033643 at *2 (9th Cir. 2009) (finding reprimand received from

10  employer did not constitute adverse employment action for purposes of retaliation claim).

11  Further, even assuming, arguendo, either the counseling memorandum or letter of

12  reprimand could be considered the equivalent of a "performance review," see Brooks, 229

13  F.3d at 928 (listing "undeserved negative performance review" among cognizable adverse

14  employment actions), plaintiff, as discussed above, has offered no evidence to support a

15  finding that any of the criticisms made therein was undeserved.

16      Similarly, the notice of proposed suspension is insufficient to support plaintiff's claim,

17  as, for purposes of a retaliation claim under Title VII, "the mere threat of termination does

18  not constitute an adverse employment action."  See Hellman, 2009 WL 5033643 at *2; see

19  also Baloch v. Kempthorne, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (finding for purposes of

20  Title VII retaliation claim, proposed suspension of plaintiff "was not materially adverse"

21  where suspension never imposed); Whittaker v. N. Ill. University, 424 F.3d 640, 647 (7th

22  Cir.2005) (holding "a suspension without pay that is never served does not constitute an

23  adverse employment action" for purposes of Title VII retaliation claim).

24      Lastly, to the extent plaintiff's retaliation claim is based on Holden's sexual

25  harassment complaint and the subsequent investigation thereof (see SAC at ¶ 124-126),

26  such claim likewise fails as plaintiff cites to no authority, and the Court is aware of none,

27  holding a complaint of such nature, or the investigation thereof, can support a claim of

28

9

1   retaliation.

2       Accordingly, plaintiff has failed to raise a triable issue with respect to this essential

3   element of her retaliation claims.

4       **2.    Pretext**

5       Assuming, <u>arguendo</u>, plaintiff has established a prima facie case, defendant further

6   argues it has presented undisputed evidence of its legitimate, non-retaliatory reasons for

7   the above-referenced actions and plaintiff has no evidence showing such actions were

8   pretextual.

9       As noted, the legitimate, non-retaliatory reasons for the counseling memorandum,

10  letter of reprimand, and notice of proposed suspension are articulated within those

11  documents.  (See Proctor Decl. Ex. C, E, & M.)  In response, plaintiff again offers no

12  evidence, but only her own inadmissible conclusions, to support a finding that the above

13  cited reasons were pretextual in nature.  (<u>See</u>, <u>e.g.</u>, <u>id.</u> Ex. A at 72:20-25, 75:12-15).

14      Next, with respect to the "Harassing Conduct Complaint Intake Form" filed by Holden

15  on April 11, 2007, plaintiff cites to no authority holding a complaint of such nature can itself

16  constitute retaliation.  Moreover, the complaint consists of Holden's listing of behaviors on

17  the part of plaintiff that prompted his complaint.  In particular, as described by Holden,

18  plaintiff: (1) "referr[ed] to herself as a wife or work-wife," (2) "ask[ed] [Holden] questions

19  about how [he was] doing personally, once after making an uninvited visit to [his] office and

20  shutting the door," (3) "[made] inquiries of other staff about their perceptions of [Holden's]

21  behavior, after offering her own opinion," and (4) "inquir[ed] of other staff about [Holden's]

22  'girlfriend' and how [he spends his] time on [his] days off."  (<u>See</u> Yee Decl. Ex. 29 at 2.)

23  Plaintiff has not disputed the truthfulness or accuracy of Holden's account of her actions,

24  but, rather, disagrees with Holden's stated concern that such behavior "suggested that

25  [plaintiff was] acting on an attraction to [him]."  (<u>See</u> <u>id.</u>; <u>see</u> <u>also</u> SAC ¶¶ 124-126.)

26      As defendant further points out, the DOL's investigation of Holden's complaint was,

27  under the agency's policies and procedures, a requisite response to a report of harassing

28

1   conduct.  (See Yee Decl. Ex. 32 at 4) (providing policy and procedures for preventing and

2   eliminating harassing conduct in the workplace).  Plaintiff submits no evidence to dispute

3   defendant's description of the DOL's policies and procedures for responding to reports of

4   sexual harassment, nor has she submitted any other evidence sufficient to give rise to an

5   inference that the investigation was pretextual in nature.[3]  Rather, the only evidence plaintiff

6   offers concerns persons not involved in either the filing of Holden's complaint or the

7   investigation thereof and consists of remarks, made by such individuals months after

8   plaintiff's resignation, that are either wholly neutral in content or adequately explained when

9   taken in context.   (See Yee Decl. Depo 10 at 19:7-17, 37-7-10 & Ex. 2; Yee Decl. Ex. 23 A

10   at 1.)

           **3.       Conclusion as to Retaliation Claims**

12          Accordingly, for the reasons stated above, summary judgment will be granted in

13   favor of defendant and against plaintiff on plaintiff's retaliation claims.

14   **C.    Hostile Work Environment – Title VII**

15      **1.  Applicable Law**

16          "Title VII is violated if sexual harassment is so severe or pervasive as to create a

17   hostile work environment."  See Kortan v. Cal. Youth. Authority, 217 F.3d 1104, 1109 (9th

18   Cir. 2000).  "An employer is liable under Title VII for conduct giving rise to a hostile

19   environment where the employee proves (1) that he was subjected to verbal or physical

20   conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the

21   conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and

22   create an abusive working environment."  See id. at 1109-10.

23          Under Title VII, to prove the existence of a hostile work environment, a plaintiff need

24   not "show that her harassment resulted in tangible loss of an economic character."  See

25  _____

26          [3]  Indeed, the DOL retained an outside investigator and concluded the investigation
     with a determination to take no further action on the complaint.  (See Yee Decl. Ex. 24
27   ("Report of Investigation") at 2, 7 ("It was decided that no further interviews would be
     conducted because the behaviors . . .  as described . . . are open to subjective
28   interpretation.")

                                                    11

1   Jordan v. Clark, 847 F.2d 1368, 1373 (9th Cir. 1998) (internal quotation and citation

2   omitted).  "[I]n order to be actionable under [Title VII]," however, "a sexually objectionable

3   environment must be both objectively and subjectively offensive, one that a reasonable

4   person would find hostile or abusive, and one that the victim in fact did perceive to be so."

5   See Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998).  In that regard, courts are

6   to "determine whether an environment is sufficiently hostile or abusive by looking at all the

7   circumstances, including the frequency of the discriminatory conduct; its severity; whether it

8   is physically threatening or humiliating, or a mere offensive utterance; and whether it

9   unreasonably interferes with an employee's work performance."  See id. at 777-78 (internal

10  quotation and citation omitted).  "Title VII does not prohibit genuine but innocuous

11  differences in the ways men and women routinely interact with members of the same sex

12  and of the opposite sex."  Id. (internal quotation and citation omitted).  "[S]imple teasing,

13  offhand comments, and isolated incidents (unless extremely serious) will not amount to

14  discriminatory changes in the terms and conditions of employment."  Id. (internal quotation

15  and citation omitted.)

16          The Court next addresses the actions on which plaintiff relies.

17          **2.      Alleged Assault**

18          Plaintiff alleges a violation of Title VII occurred when, in 2004, she was "assaulted"

19  by Sefakis, her supervisor at that time.  (See SAC at ¶ 11.)  Plaintiff's description of the

20  incident is as follows:

21              On April 15th between 3 pm and 3:20 pm I had a short exchange with
             Nancy [Sefakis].  We had no plans for a meeting and I had not seen her all
22           day.  She came into my office and said, "I got all your email[s] and you are
             going to do this."  This was in reference to the budget update.  I told her
23           that I was not opposed to doing it, I just needed to know the jurisdiction.
             She slammed the door and came around to me while I was sitting at the
24           computer.  She pushed me hard enough to get between me and my
             computer.  She pushed my right arm with her hand and pushed my
25           knees/legs back with her body.  My chair was on rollers and she pushed
             me back far enough to place herself between me and my computer.  I tried
26           to get up out of my chair, and she blocked my way.  I barreled through
             anyway and pushed past Nancy for my door.  I didn't call the police
27           because it would have been embarrassing to me and disruptive to my
             staff.

28

                                                    12

1   (See Yee Decl. Ex. 20, DOL01312; see also Proctor Decl. Ex. H, DOL00018-19.)

2          Defendant argues the above-described incident constituted nothing more than a

3   non-actionable, isolated occurrence[4] and, in any event, was not motivated by any protected

4   characteristic of, or conduct on the part of, plaintiff.  The Court agrees.

5          First, as noted, "isolated incidents (unless extremely serious) will not amount to

6   discriminatory changes in the terms and conditions of employment" sufficient to constitute a

7   hostile environment.  See Faragher, 524 U.S. at 788 (internal quotation and citation

8   omitted).  Additionally, defendant has submitted evidence demonstrating the incident was

9   the result of a dispute over plaintiff's purchasing authority and control over her budget and

10  was not motivated by discriminatory or retaliatory animus.  (See Proctor Decl. Ex. V at DOL

11  00098.)  Plaintiff has offered no evidence, but only her own inadmissible conclusions, in

12  response.  (See, e.g., id. Ex. A at 45:15-21 (opining incident motivated by discriminatory

13  animus because "[plaintiff] was happily married with children and [Sefakis] was not"); id. at

14  48:1-4 (opining, without factual elaboration: "[Sefakis] just doesn't like minorities").

15         Accordingly, plaintiff has failed to raise a triable issue with respect to her claim that

16  the above-described encounter with Sefakis constituted a violation of Title VII.

17         **3.     Sexual Harassment**

18         In her SAC, plaintiff alleges she was subjected to sexual harassment constituting a

19  hostile work environment created by her supervisor, Holden, in the course of non-work

20  related meetings and communications with plaintiff.  In particular, plaintiff alleges, Holden:

21  (1) "would call her into his office just to talk or keep him company"; (2) "became jealous of

22  men who spoke to her" and "sent [her] an email in which he questioned her relationship

23  with a guy she hardly knew"; (3) "would ask her to go places with him outside of the office"; 

24  (4) "sent her an email which . . . insisted that she was ignoring him and demanded that she

25  look at him"; (5) "chased [her] around the file cabinets"; (6) and "fil[ed] a 'complaint' with his

26  ─────────────────────

27        [4]  Sefakis disputes plaintiff's account of the incident.  (See Proctor Decl. Ex. V at 98-
    100.)  As noted, however, the Court does not make credibility determinations in the context
28  of a motion for summary judgment.

superiors stating that [her] actions  . . . were indications that she was 'attracted to [him], her supervisor.'"  (See SAC at 5:9-6:16.)

### a.    Office Visits

Defendant argues "[p]laintiff has failed to produce a single witness or document supporting her claims that Holden . . . scheduled meetings with no purpose."  (See Def.'s Mot. at 21:18-19.)  In her SAC, plaintiff alleges two incidents in which she was required to attend private meetings with Holden.

First, on December 15, 2006, Holden, during working hours, allegedly "refused to send work-related documents to [her] until she met with him in a private closed-door session."  (See SAC ¶ 57.)  The e-mails on which plaintiff's claim is based, however, do not support a finding of sexual harassment, as they contain no sexually suggestive content and reflect no more than Holden's attempt to provide the documents to plaintiff as expeditiously as possible given the time constraints pertaining at that time. (See Yee Decl. Ex. 23 B at 19.)

Second, Holden allegedly "sent [p]laintiff a March 15, 2007 email stating that if she refused his private meetings, she would be subject to disciplinary action."  (See SAC ¶ 84.)  The cited e-mail, however, contains no such condition, nor does it contain any sexual or other improper suggestion, but, rather, consists of a list of complaints about plaintiff's work, and, with respect to possible discipline, states:

> You need to review my instructions, look carefully over the notes, review information from other plans, and redraft the plan so that it is a completed product – narrative, plan sheets, and press release schedule appendix.  I also expect the new draft to show thought and care and action items in the narrative should conform to those in the plan sheets.  Since this plan will be late for submittal to the national office as of COB today, I am directing you to complete the new draft by noon, March 19.  Failure to follow this direction may lead to disciplinary action.

(See Yee Decl. Ex. 33 at 2.)

Accordingly, plaintiff has failed to submit evidence sufficient to support a finding that Holden required any private meeting with plaintiff for an improper purpose.

### b.    Jealousy

14

Defendant argues plaintiff has no evidence to support a finding that Holden at any time behaved in a jealous manner.  In her SAC, plaintiff alleges "Holden became extremely jealous of others who spoke to [p]laintiff, in particular, men" and "[o]nce, he questioned her relationship with someone she barely knew and sent her an email with a blank inserted after his name."  (See SAC ¶¶ 100, 101.)  The sole evidence plaintiff submits in support of such allegation is an exchange of e-mails on March 30, 2007, which exchange begins with plaintiff's seeking Holden's permission for the daughter of one of plaintiff's "professional contacts" to "shadow" plaintiff for three days during the daughter's spring break.  (See Yee Decl. Ex. 23 R at 3).  When Holden inquired as to the identity of the individual who would be doing the "shadowing," plaintiff responded: "Her dad is with EBSA, I don't think you've met David"  (see id.), to which Holden replied:

> Based on what you have been telling me, you don't have time for it, even if allowed.  I don't know who David _____ is but perhaps he should look for some other spring break opportunities for her.

(See id.)

Contrary to plaintiff's allegation, the above-described e-mails contain no evidence of sexual harassment, but only a stated concern for a subordinate's ability to deal with competing obligations.  Moreover, defendant has submitted undisputed evidence that as of the date of the subject exchange, plaintiff's operational plan, which was due at the national office on March 15, 2007, was fifteen days late.  (See Proctor Decl. Ex. M at 3).

Accordingly, plaintiff has failed to submit evidence sufficient to support a finding that Holden, on any occasion, behaved in a jealous manner.

### c.   Dates

In her SAC, plaintiff alleges that "in November 2006, Holden asked [her] out on a date" (see SAC ¶ 55), and "[o]n January 12, 2007, Holden insisted that [she] attend an offsite event with her," which "was not a valid work event" (see id. ¶¶ 58-59).  Defendant argues plaintiff has no evidence to support a claim that Holden asked plaintiff "out on a date."

15

First, with respect to the November 2006 invitation, defendant submits plaintiff's deposition testimony, in which plaintiff describes the alleged incident as an invitation Holden extended to plaintiff and her husband to attend a dance recital with him.  (See Proctor Decl. Ex. Y at 176:3-23.)  As defendant points out, even accepting plaintiff's deposition testimony as true, a trier of fact could not reasonably conclude plaintiff was subjected to a sexually objectionable work environment based on such invitation.  Indeed, as defendant further points out, plaintiff herself testified: "I hadn't even realized he was asking me on a date."  (See id.)

Second, with respect to the January 12, 2007 event, defendant submits undisputed evidence demonstrating there was no improper communication.  In particular, defendant submits the e-mail on which plaintiff relies, which e-mail contains in the subject line "There is a podcasting seminar by Make Magazine," and continues with the text "[a]t the Apple Store today from 3-4.  I am thinking of attending part of it and it would be helpful if you did also.  I have some more info on that as well."  (See id. Ex. K.)  Nothing in said communication is sexually suggestive or otherwise improper.

To the extent plaintiff offers her deposition in further support of her claim, her reliance thereon is unavailing.  In particular, plaintiff's conclusory testimony, that Holden, after sending the above-referenced e-mail, "basically made it really clear that there would be repercussions" if she did not attend, lacks any factual content, let alone any sexual content (see id. Ex. A at 114:10-15), and her testimony that the DOL's "podcasting project" had been cancelled prior to January 12 (see id. at 116:19-24), that Holden had "signed out for the day," asked plaintiff "about [her] commute," and "didn't walk over with [plaintiff]" to the Apple Store (see id. Ex. A at 114:10-115:20) adds nothing in that regard.

Accordingly, plaintiff has failed to submit evidence sufficient to support her claim that Holden asked her out on a date.

### d.    Insistence that Plaintiff "Look at" Holden

In her SAC, plaintiff alleges Holden "saw plaintiff emerge from the bathroom," asked

16

1   her "how she was" and then "sent her an e-mail saying she was ignoring him," and, in a

2   subsequent e-mail, "ordered her to turn around and look at him." (See SAC ¶¶ 66, 67.)

3   Defendant argues such communications do not support a finding of sexual harassment, but

4   instead "reflect the efforts of a supervisor to work with a difficult employee." (See Def.'s

5   Opp'n at 6:3-4.) The Court agrees the communications on which plaintiff relies are, as a

6   matter of law, insufficient to support a claim of sexual harassment.

7       The first of the subject e-mails states:

8       Just about an hour ago this morning when I saw you in the hallway, I asked how
        things were going. You turned into the office, walked away, back to me, and
9       ignored my question until I asked you again 'how's it going with the press
        releases?' You proceeded to walk and without turning around, responded 'fine.' It
10      is not acceptable for you to ignore my questions and respond by walking away.
        When I ask you a question about how things are going, I expect you to respond by
11      answering me and facing me, so that we can both be sure you have answered the
        question and that there are no further questions.

12  (See Yee Decl. Ex. 23 B at 23-24.)

13      Following her receipt of the above-quoted e-mail, plaintiff sent a reply, in which she

14  explained she had not heard Holden because she was preoccupied with work at the time.

15  (See id.) The second of the e-mails on which plaintiff relies is Holden's reply to plaintiff,

16  which states:

17      It did not occur to me that you were distracted yesterday, because when I
18      first asked you how things were going we were walking towards each
        other and facing each other. You had to have seen my lips move even if
19      you did not hear me. I have observed similar behavior last week as well
        but did not bring it to your attention. I am going to assume you will hear
20      me in the future when I talk to you and ask questions.

21  (See id.)

22      Viewed in the light most favorable to plaintiff, such communications do not support

23  plaintiff's allegations of the existence of a sexually harassing work environment, and,

24  indeed, contain no sexually suggestive content.

25      Accordingly, plaintiff has failed to submit evidence sufficient to support her claim that

26  Holden, either in person or by e-mail, made sexually suggestive comments to plaintiff.

27          **e.    "Chased Around File Cabinets"**

28

17

In her SAC, plaintiff alleges she was sexually harassed when she was "chased [ ] around the file cabinets" on March 24, 2007.  (See SAC at 5:26-6:3, ¶ 103.)  Defendant argues the evidence on which plaintiff relies is insufficient to support such allegation.  The Court agrees.  In particular, the notice of proposed suspension, on which plaintiff relies for a description of the subject incident, recounts the following:

> I told you that you were responsible for your unit's move and that you still had material left in your high-density files.  You said that I should help you with this, and I again reminded you that this was your responsibility.  You said something to the effect of "alright, that's enough" and picked up your bag to leave.  I again reminded you that if you left, it would be contrary to my direct order that you stay to ensure that your unit's boxes and furniture were completely moved.

(See Yee Decl. Ex. 26 at 4.)

As noted, isolated incidents ordinarily will not suffice to support a hostile work environment claim under Title VII.  See Faragher, 524 U.S. at 788.  Moreover, and most significantly, the above described incident includes no behavior that reasonably can be interpreted as "chasing," let alone a sexually motivated pursuit.

Accordingly, plaintiff has failed to submit evidence sufficient to support her claim that she was chased around file cabinets.

### f.      April 11, 2007 Sexual Harassment Complaint and Investigation

In her SAC, plaintiff alleges the sexual harassment complaint made by Holden against plaintiff on April 11, 2007 constitutes sexual harassment.  (See SAC at 6:10-16, ¶ 125.)  Plaintiff cites to no authority holding a complaint of such nature can itself constitute sexual harassment or itself create a hostile environment for purposes of Title VII.  Moreover, the complaint was not directed to plaintiff, nor does plaintiff submit any evidence indicating she was aware of such complaint until some time after her resignation.  Indeed, plaintiff's EEO complaint, filed with the DOL after plaintiff's resignation and more than a month after Holden's complaint was made, makes no mention of Holden's complaint or its investigation.  (See Proctor Decl. Ex. S.)

Further, nothing in the content of the complaint is sexually provocative, but, rather,

as described above, consists of Holden's listing of behaviors on the part of plaintiff that prompted his concerns (see also Yee Decl. Ex. 29 at 2) and plaintiff has not disputed the truthfulness or accuracy of Holden's account of her actions.  Lastly, as discussed above, the evidence is undisputed that the ensuing investigation was mandated by the DOL's policies and procedures.

Accordingly, plaintiff has failed to submit evidence sufficient to support her claim that Holden's sexual harassment complaint, or the DOL's investigation thereof, constituted harassment.

### g.    Other Alleged Conduct

In her SAC plaintiff makes the following allegations: (1) Holden ordered plaintiff to "sequester herself away from others," (2) "plaintiff was ordered to work a non-standard workweek well in excess of others" and "outside the permit of the law," (3) "Holden commanded plaintiff to "admit you love me," (4) "plaintiff was given public tasks of humiliation", and (5) "[t]he Agency, from the very top down, encouraged Mr. Holden's romantic fantasy."  (See SAC ¶ 94, 95, 96, 99, 108, 127.)  Absent further elaboration, none of said allegations is sufficient to describe a hostile work environment based on sexual harassment.  More importantly, plaintiff fails to identify evidence to support any such allegation, nor is the Court required "to scour the record in search of a genuine issue of triable fact."  See Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation and citation omitted).

Accordingly, plaintiff has failed to submit evidence sufficient to support her claim that any such alleged conduct constituted sexual harassment.

### 3.  Conclusion as to Hostile Work Environment Claims

As discussed above, plaintiff has failed to raise a triable issue as to any conduct sufficient to either create or contribute to a discriminatory or retaliatory hostile work environment, and, accordingly, summary judgment will be granted in favor of defendant and against plaintiff on plaintiff's Title VII hostile work environment claims.

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C.    **Nondiscriminatory Constructive Discharge – CSRA**[5]

Plaintiff's claim under the CSRA is based on an allegation of wrongful termination in the form of constructive discharge (see SAC ¶ 131) and relies on all of the above-referenced allegations of a hostile work environment with the exception of an asserted discriminatory motivation therefor.  (See Pl.'s Mot. at 19:15-33.)

The CSRA provides a remedial scheme by which federal employees can appeal certain adverse employment actions, such as a termination or forced resignation.  See 5 U.S.C. § 2302; 7701; see also Parrott v. Merit Systems Protection Board, 519 F.3d 1328, 1332 (Fed. Cir. 2008).  Ordinarily, a federal employee must first appeal to the Merit Services Protection Board ("MSPB"), see 5 U.S.C. §§ 7513(d), 7701(a), and any judicial review thereof must be sought from the Federal Circuit Court of Appeals.  See 5 U.S.C. § 7703.  Where a plaintiff brings a "mixed case," however, i.e. a case involving a personnel action within the jurisdiction of the MSPB together with a Title VII claim within the jurisdiction of the Equal Employment Opportunity Commission ("EEOC"), the MSPB has jurisdiction to hear both claims, after which, if the claimant is dissatisfied with the result, judicial review must be sought in the district court.   See Washington v. Garrett, 10 F.3d 1421, 1428 (9th Cir. 1993).  In the district court, "[t]he complainant is entitled to trial de novo on her discrimination claim," see id., whereas, with respect to the personnel action, the MSPB's decision is reviewed for abuse of discretion.  See id.  In particular, such decision "is not to be set aside unless it is '(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." See id. (citing 5 U. S. C. § 7703(c)).

Here, prior to filing the instant action, plaintiff brought her constructive discharge

---

[5]  The Court will deny plaintiff's "Motion for Dismissal Without Prejudice on Nondiscriminatory (CSRA) Portion of Plaintiff's Complaint," as plaintiff has failed to show any cause, let alone good cause, why a ruling on such claim should not be rendered herein.

1    claim before the MSPB, and on July 11, 2008, the MSPB rendered an "initial decision,"

2    finding plaintiff was not constructively discharged and dismissing plaintiff's appeal on its

3    merits.  (See Proctor Decl. Ex. B at 24.)

4         Plaintiff now argues the MSPB erred in determining its jurisdiction.  Plaintiff cites to

5    no authority so holding.  Indeed, the authority on which plaintiff relies, see Garcia v. Dept.

6    of Homeland Security, 437 F.3d 1322 (Fed Cir. 2006), supports the MSPB's jurisdictional

7    finding.  See id. at 1344 (holding plaintiff bringing claim before MSPB has burden of

8    establishing jurisdiction); (Proctor Decl. Ex. B at 4 (finding plaintiff's allegations, if proved,

9    sufficient to establish MSPB jurisdiction)).

10        Plaintiff next argues the MSPB's decision should be set aside because the MSPB

11   failed to discuss in its decision the DOL's investigation of Holden's complaint and to

12   adequately assess the credibility of the various witnesses.  Plaintiff's argument is

13   unpersuasive, as the MSPB's decision cannot be characterized as arbitrary, capricious, or

14   an abuse of discretion, and the findings made therein are fully supported by substantial

15   evidence.  In particular, the MSPB, in reaching its decision that plaintiff's resignation was

16   voluntary, adequately considered the relevant evidence submitted (see Proctor Decl. Ex. B

17   at 6-20), provided a lengthy summary of such evidence (see id.), and properly resolved

18   issues of credibility (see id. at 20-25); see also Hillen v. Dep't of Army, 35 M.S.P.R. 453,

19   458 (MSPB 1987) (setting forth standard for administrative judge to follow when resolving

20   credibility issues).

21        Moreover, even if plaintiff were entitled to a trial de novo on her nondiscriminatory

22   constructive discharge claim, such claim would fare no better.  As noted, the conduct on

23   which plaintiff relies to support her nondiscriminatory constructive discharge claim is the

24   same conduct on which plaintiff relies for her discrimination claims.  As discussed, such

25   evidence is insufficient to support a finding of a hostile work environment, irrespective of

26   the asserted motive therefor.

27        Accordingly, summary judgment will be granted in favor of defendant and against

28

21

1    plaintiff on plaintiff's CSRA claim.

2         **D.    Privacy Act Claim**

3         As noted, the DOL retained the services of an outside investigator to conduct the

4    investigation of Holden's sexual harassment complaint against plaintiff.  In her SAC, plaintiff

5    alleges the report was improperly withheld from her in violation of the Privacy Act.  (See,

6    e.g., SAC ¶¶ 140, 154.)

7         "An individual may bring a civil action against an agency that fails to comply with the

8    statutory requirements of the Federal Privacy Act, which is part of the broader Freedom of

9    Information Act ["FOIA"], provided that the individual has exhausted administrative

10   remedies and/or can demonstrate adverse effect."  See Tangirala v. Potter, 2008 WL

11   2633239, *18 (E.D. Cal. 2008) (citing 5 U.S.C. § 552a(g)(1)).  Challenges to access,

12   accuracy or amendment of federal agency records produced under FOIA must be

13   administratively exhausted before they may be pursued in federal court.  See 5 U.S.C. §

14   552a(g)(1); see also Hill v. U.S. Air Force, 795 F.2d 1067, 1069 (D.C.Cir.1986) (holding

15   Privacy Act plaintiff must exhaust his or her administrative remedies prior to bringing suit);

16   see also Hewitt v. Grabicki, 596 F. Supp. 297, 303 (D.C.Wash.1984) (holding 5 U.S.C. §

17   552a(g) requires administrative review as condition precedent to federal court action) (citing

18   U.S. v. California Care Corp., 709 F.2d 1241, 1248 (9th Cir. 1983)).

19        Here, as defendant points out, plaintiff received, on January 23, 2008, a letter

20   informing her of the agency's denial of her FOIA request for documentation pertaining to

21   the subject investigative report (see Yee Dec. Ex. 23 A), which letter advised plaintiff of her

22   right to appeal (see id. at 2).  Plaintiff, however, did not appeal the decision (see Mitten

23   Decl. ¶ 7), and thus has failed to exhaust her administrative remedies.  Moreover, as

24   defendant further points out, a federal magistrate judge, in an order filed November 18,

25   2009, has found defendant complied with his order to produce the subject investigative

26   report to plaintiff, and that plaintiff's assertions of fabrication and spoliation are meritless.

27   (See Nov. 18, 2009 Order at 2:3-15.)  No objection to such finding has been made by either

28

                                          22

1    party.  Consequently, plaintiff's Plaintiff's Privacy Act claim fails for the additional reason

2    that it is moot.

3          Accordingly, summary judgment will be granted in favor of defendant and against

4    plaintiff on plaintiff's Privacy Act Claim.

5                        **CONCLUSION**

6          For the reasons stated above:

7               1.  Defendant's Motion for Summary Judgment is hereby GRANTED.

8               2.  Plaintiff's Motion for Summary Judgment or, in the Alternative,

9    Adjudication of Claims is hereby DENIED.

10              3.  Plaintiff's Motion for Dismissal Without Prejudice is hereby DENIED.

11    **IT IS SO ORDERED.**

12

13    Dated:  April 22, 2010

MAXINE M. CHESNEY
United States District Judge